UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-499-01M (JMF)** |
| | : | |
| v. | : | |
| | : | |
| **ANDREA K. GRIMSLEY,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits this memorandum in aid of the sentencing of defendant Andrea K. Grimsley.

### I. FACTUAL BACKGROUND

On September 28, 2005, defendant pled guilty before the Court to a one-count Information charging her with a misdemeanor violation of 18 U.S.C. §§ 208 and 216(a)(1), Acts affecting a personal financial interest.

As agreed to by the defendant and set fort in the Statement of Offense and the Presentence Investigation Report ("PSR"), at pages 3-5, the Headquarters Support Branch within the United States Immigration and Customs Enforcement Division (hereafter, "ICE") was an office of the Department of Homeland Security which is located in Washington, D.C., and is part of the Executive Branch of the United States Government. The Headquarters Support Branch, among other things, reviewed, commented upon, and made recommendations regarding federal contracts to be awarded to private organizations to support its mission in developing and coordinating the implementation of a comprehensive national strategy to secure the United States. The defendant was the Chief of the Headquarters Support Branch. As Chief, she had primary authority for oversight and direction

of procurement activities. Her responsibilities included providing technical guidance, formulating contract actions, negotiating procurement initiatives and resolving disputes and claims for ICE.

The Weapons and Ammunition Commodity Council (hereafter "WACC") was part of the Department of Homeland Security's Strategic Sourcing Program, an initiative to optimize cross-departmental handgun acquisitions through collaboration of agency technical and acquisition experts. The National Firearms and Tactical Training Unit (hereafter "NFTTU") was an office within the Department of Homeland Security which was responsible for the technical aspects of weapons contracting.

FedBid.com (hereafter "FedBid") was a private, for-profit business located in McLean, Virginia, which provided web-based procurement services to public sector organizations such as the Department of Homeland Security. Specifically, FedBid offered an online reverse auctioning service that allowed federal agencies to solicit contractors. In exchange for its auction services, FedBid received a commission (generally 3% of the contract price) from the successful contract award recipient.

In or about November, 2003, the WACC announced that the Headquarters Support Branch of ICE, in conjunction with the NFTTU, would head a procurement initiative ("the handgun acquisition") to acquire an additional 65,000 pistols for their existing weapons platform to be distributed among all organizational elements within the Department of Homeland Security, including ICE, U.S. Customs and Border Protection, the Transportation Security Administration, the U.S. Coast Guard and the Federal Law Enforcement Training Center.

In or about November, 2003, as Chief of the Headquarters Support Branch of ICE, defendant was initially assigned and did assume responsibility as the Contracting Officer for the handgun

acquisition. Generally, the Contracting Officer has the sole authority and duty to enter into, administer, and make related determinations and findings regarding the handgun acquisition. In short, the Contracting Officer is responsible for overseeing all substantive and technical aspects of the handgun acquisition, including the method and manner for the solicitation of bids.

From in or about late November, 2003, through in or about February, 2004, defendant was a candidate for a position at FedBid as an account executive reporting directly to Brendan Walsh, Vice President of FedBid. On or about January 13, 2004, ICE issued a Request for Information soliciting information about a pistol model family from potential contractors. The handgun contract solicitation requirements were defined as follows in the Request for Information: "Pricing will be submitted through a Reverse Auction. Only contractors that are considered technically acceptable after evaluation of the technical requirements shall be permitted to participate in the Reverse Auction. Offerors will need to register with www.FEDBID.com to submit their pricing quotes. Questions regarding registration should be addressed to client services at 1-877-9FEDBID(toll free)."

In late November, 2003, defendant sought advice from the Ethics Officer at ICE about a potential conflict of interest related to her employment negotiations with FedBid and, on December 1, 2003, sent an email to him confirming their discussion. In that email defendant stated that "[a]ny acquisitions that might be considered for fedbid.com soliciting will be handled by our senior contract specialist, Jan Wisor . . . [t]his will prevent the appearance that I'm recommending the use of fedbid.com." Notwithstanding this email, from in or about late November, 2003 through in or about February 2, 2004, in the District of Columbia and elsewhere, defendant, while an employee of the executive branch of the United States government, did participate personally and

substantially in the handgun acquisition, a matter in which, to her knowledge, FedBid had a financial interest.

Specifically, on or about January 6, 2004, defendant and her subordinate attended a handgun contract meeting at NFTTU in Altoona, Pennsylvania. Throughout the meeting, defendant was the primary participant in the discussions regarding the technical aspects of the handgun contract which would be set forth in the upcoming January 13, 2004 Request for Information. During this meeting or shortly thereafter, defendant directed her subordinate to include in the Request for Information a requirement that all prospective bidders register with and utilize FedBid during the procurement process. On or about January 7, 2004, defendant participated, by phone, in a high-level meeting with the WACC to discuss the number of weapons to be acquired and the appropriate distribution of those weapons among the various organizational elements.

By letter dated January 8, 2004, FedBid extended an offer of employment for the position of Account Executive to defendant which set forth the terms of the offer including, among other things, base compensation, other compensation, start date, health insurance and 401K benefits. On or about January 16, 2004, defendant executed the employment offer from FedBid acknowledging her acceptance of the terms of the offer, which included a February 2, 2004, start date.

On or about January 21, 2004, defendant participated, by phone, in a second meeting with the WACC to further discuss development of the strategic sourcing plan including the specific distribution of weapons acquired through the upcoming handgun contract. On or about February 2, 2004, defendant began her employment with FedBid as an Account Executive.

The United States Attorney's Office for the District of Columbia and defendant do not read the specific misdemeanor provision with which defendant is being charged as requiring proof of

specific intent. Further, the parties agree that the evidence adduced in the course of the investigation, while sufficient to prove a violation of the misdemeanor statute beyond reasonable doubt, does not indicate that defendant's conduct was willful.

## II.  UNITED STATES SENTENCING GUIDELINES

The probation officer believes, and the United States concurs, that the defendant's total offense level is 4, her criminal history is I, and his Sentencing Guidelines range is zero to six months of imprisonment. Presentence Investigation Report ("PSR"), at page 6, ¶¶ 24-31, and 11, ¶ 57. According to the PSR, the defendant falls within Zone A of the Sentencing Table, and she is eligible for probation. *Id.*, at page 11, ¶ 63. The government, in its plea agreement with defendant, agreed not to oppose a probationary sentence. Plea Letter, September 15, 2005, at page 3, ¶ 6. If the Court imposes a probationary sentence, the term must be no more than three years. PSR, at page 11, ¶ 63.

## III.  IMPACT OF U.S. v. BOOKER ON THE SENTENCING GUIDELINES

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). In consequence, the Court invalidated the statutory provision that made the Guidelines mandatory: Title 18, United States Code, § 3553(b)(1). Booker, 125 S. Ct. at 756; United States v. Price, 409 F.3d 436, 442-43 (D.C. Cir. 2005). However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as a benchmark for informing courts as to what would be a reasonable sentence for a particular defendant who has committed a particular crime. The sentence will then be subject to review by courts of appeals for "reasonableness." See Booker, 125 S. Ct. at 766; Price, 409 F.3d at 441, 442.

In this case, there are no facts involved in the calculation of defendant's sentence under the Sentencing Guidelines that were not admitted by her in her guilty plea in this matter. That is, the offense carries a base offense level of 6, and the defendant was entitled to a two-level reduction for acceptance of responsibility, which results in an adjusted offense level of 4. Although the Supreme Court has now held that the Sentencing Guidelines are no longer mandatory, a reasonable sentence in this case would be as is set forth by the Sentencing Guidelines. The government requests that the Court use the Guidelines in determining the sentence of defendant in this case, that is, a sentence within the range of 0 to 6 months in Zone A.

## IV. **RECOMMENDATION**

The statute to which defendant pled guilty, 18 U.S.C. § 208, is designed to promote the integrity of government actions by assuring that they will not be unduly affected by an official's consideration of the official's financial interests or those of persons or entities who, because of their close relationship with the official, might influence the official's actions. In other words, "Section 208 sets forth an objective standard of conduct which is directed not only at dishonor, but also at conduct which tempts dishonor." United States v. Gorman, 807 F.2d 1299, 1304 (6th Cir. 1986), *cert. denied*, 484 U.S. 815 (1987) (*citing* United States v. Mississippi Valley Generating Co., 364 U.S. 520 (1960), which was directed at 18 U.S.C. § 434, the predecessor to Section 208); *see* United States v. Conlon, 628 F.2d 150, 154-56 (D.C.Cir. 1980), *cert. denied*, 454 U.S. 1149 (1982) ("Section 208(a) was enacted in 1962 . . . prompted by 'a growing concern, both in and out of Congress, with the ever present and perplexing problems of how best to assure high ethical standards in the conduct of the Federal Government.'").

In this case, defendant was a Department of Homeland Security official who put herself in a compromised position when, being responsible for a reverse auction process in which a private company had a financial interest, was negotiating for and obtained employment with that private company. These actions clearly were within the realm of conduct by defendant which "tempts dishonor."

In this case, the government is requesting that the Court sentence defendant within the sentencing range under the Sentencing Guidelines, as set forth above, in the PSR, and in the plea agreement. As to the appropriate sentence within that range, the government defers to the Court and the government does not oppose probation.

## V. CONCLUSION

WHEREFORE, the government respectfully requests that the Court impose a sentence within the applicable guidelines's range, as specified in the plea agreement.

    Respectfully Submitted,

    KENNETH L. WAINSTEIN
    UNITED STATES ATTORNEY
    D.C. Bar No. 451058


    [s]
    _____
    DANIEL P. BUTLER
    ASSISTANT UNITED STATES ATTORNEY
    D.C. Bar No. 417718
    555 Fourth Street, N.W., Room 5231
    Washington, D.C. 20530
    (202) 353-9431
    Daniel.Butler@USDOJ.Gov