UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | CRIMINAL CASE NO. 05-0499M-01 |
| Plaintiff, : | VIOLATION: 18 U.S.C. §§ 208 & 216(a)(1) (Financial Conflict of Interest) |
| v. : | |
| ANDREA K. GRIMSLEY, : | |
| Defendant. : | |

## MEMORANDUM IN AID OF SENTENCING

Comes now, defendant Andrea K. Grimsley, through undersigned counsel, to provide the Court with the following information and suggestions in aid of sentencing. On September 28, 2005, Ms. Grimsley pled guilty to a misdemeanor violation of 18 U.S.C. §§ 208 and 216(a)(1), financial conflict of interest affecting a personal financial interest. Sentencing is presently scheduled for Friday, December 9 at 9:30 am. Ms. Grimsley and her counsel have reviewed the preliminary Presentence Investigation Report (provided on or before November 4) and found no material errors or omissions. Ms. Grimsley and her counsel have also reviewed the Government's Memorandum in Aid of Sentencing.

The parties agree that Ms. Grimsley is eligible for probation pursuant to the calculations of the Probation Office. The Government has agreed not to oppose probation. Under the Sentencing Guidelines, Ms. Grimsley's calculated offense level is a "4" with no prior criminal history. Accordingly, she falls into Zone A of the Guidelines and is eligible for

probation under U.S.S.G. § 5B1.1(a). In this memorandum we briefly address the other pertinent factors in 18 U.S.C. § 3553(a).[1]

A.          **SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)**

First, the nature and circumstances of the offense are unique. As acknowledged by the Government (*see* Plea Agreement ¶ 8 (Attachment A); Statement of Offense at 5 (Attachment B)), the violation to which Ms. Grimsley has pleaded guilty does not require any showing by the Government that she intentionally violated the conflict of interest laws, or that she acted with any malicious intent whatsoever. "[T]he evidence adduced in the course of the investigation, while sufficient to prove a violation of the misdemeanor statute beyond reasonable doubt, does not indicate that GRIMSLEY'S conduct was willful." (Statement of Offense at 4-5; *see also* Gov't Mem. at 4-5.) For a misdemeanor prosecution of this nature, the Government has contended throughout that Ms. Grimsley need only be shown to have "substantially participated" in a transaction in which she had a "financial interest." Ms. Grimsley did not have to understand that the actions she took put her in a position of conflict, nor was it necessary for the Government to show that she understood her actions were unethical or wrong. Counsel has confirmed that the Government's understanding of the "strict liability" nature of the misdemeanor crime is correct. For these reasons, Ms. Grimsley has admitted her violation and taken responsibility for her actions.

---

[1] The Government discusses the impact of *United States v. Booker*, 125 S. Ct. 738 (2005) on the Guidelines and nonetheless requests that "the Court use the Guidelines in determining the sentence of defendant in this case." (Gov't Mem. at 6). While Ms. Grimsley does not dispute the Government's reading of *Booker* or its request, the Supreme Court's opinion in *Booker* specifies that the Guidelines are but one consideration to be considered by a sentencing court pursuant to 18 U.S.C. § 3553(a). *See Booker*, 125 S. Ct. at 764 (Breyer, J.) ("[T]he Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals.") (citing 18 U.S.C.A. § 3553(a) (Supp. 2004)). For this reason, Ms. Grimsley has taken care to address the other sentencing goals whose consideration is mandated by the Supreme Court.

2

The nature and circumstances of the offense also demonstrate an absence of venal motive. Without repeating or belaboring the facts as set forth in the Statement of Offense, Ms. Grimsley's actions in substantially participating in the "pistol contract" were undertaken out of her desire to ensure that the pistol contract would be let in a timely and successful fashion. *See* Letter to S. Bunnell at 5 (Attachment C). The precursors of the pistol contract had been substantially delayed in other offices, much to the frustration of agencies that required the equipment. When the contract was officially transferred to her office in late 2003, a strong sense of urgency accompanied it. Having had success with FedBid as a reverse auction tool in previous, similar situations, Ms. Grimsley encourage the use of FedBid as a "great tool" for her office to use in this instance as well. As further background for Ms. Grimsley's innocent motives for participation in the pistol contract, we refer the court to our much more fulsome discussion of Ms. Grimsley's view of the facts, as previously stated in our letter to Mr. Bunnell of August 2, 2005 (Attachment C).

Second, the history and characteristics of the defendant plainly favor a probationary sentence. Ms. Grimsley has an unblemished record of service to the United States government for 30 years. As the Presentence Investigation Report shows, she has absolutely no prior record that would indicate that the circumstances giving rise to the instant charge were in any way presaged by past events. In Ms. Grimsley's life as a law abiding and contributing citizen, this event is utterly unprecedented. These facts, together with the acknowledged lack of willfulness, demonstrate that incarceration or even onerous and lengthy probationary terms would serve no rehabilitative purpose.

Further, Ms. Grimsley has been thoroughly educated in the conflict of interest laws and requirements through this process, and fully understands that her actions were contrary

3

to law. The particular situation leading to her plea is not capable of repetition, in that it occurred very near to, and only as a result of, Ms. Grimsley's retirement following 30-years of government service and her having accepted a post-retirement position at FedBid. Given the length of Ms. Grimsley's tenure and former position as a civil servant (as opposed to an appointed position), her situation does not give rise to "revolving door" concerns.

Third, these same facts warrant favorable consideration under the specifics of 18 U.S.C. § 3553(a)(2) as well, which address promoting respect for the law, affording adequate deterrence, protecting the public, and providing the defendants with needed educational services. Ms. Grimsley's plea itself to a crime demonstrates the seriousness of the offense and will promote respect for the law. Her forthright acceptance of responsibility in this matter will also promote respect for the law and act as a strong deterrent for those retiring government officials who, as Ms. Grimsley once did, are seeking private sector employment.

Ms. Grimsley does still work with other federal government employees as an account executive with FedBid. For this reason, her former employer, the Department of Homeland Security, has reviewed Ms. Grimsley's conduct and determined that no suspension or debarment action is necessary and that she remains a responsible contracting party. (*See* Administrative Settlement Agreement of October 6, 2005 (Attachment D).) In connection with this review, Ms. Grimsley volunteered to take a one-day seminar in Ethics in Government Contracting in Washington, D.C. (offered by Management Concepts Incorporated, a government-approved provider of such courses) and she has successfully completed that course. The Court may consider this effort as evidence of her rehabilitation trustworthiness as well. Also, with respect to Ms. Grimsley's responsibility as a government contractor, the Court may wish to consider the letters of Mr. Cadori (Attachment E), Mr. Manard (Attachment F), and

4

Mr. Denny (Attachment G), each of whom worked with Ms. Grimsley in her various positions as a procurement officer. Each of these gentlemen speaks to her integrity and adherence to both the rules and to fairness in conducting her procurement activities. Their statements further indicate that Ms. Grimsley's actions in this case reflected an error in judgment that is a true anomaly in her career and her life.

Fourth, no need for a restitution provision exists. Under paragraph 9 of the Plea Agreement letter, the Government has acknowledged that "the Department of Homeland Security and the United States suffered no financial impact or other monetary loss as a result of Ms. Grimsley's violation." The Government's own Memorandum in Aid of Sentencing further acknowledges that Ms. Grimsley's actions "were within the realm of conduct...which tempts dishonor." (Gov't Mem. at 7.) It does not contend that Ms. Grimsley's actions had any impact in fact.

For many of the same reasons, a fine is also not called for in this instance. In addition to the absence of impact and the absence of willfulness, Ms. Grimsley's plea has been a considerable hardship to her emotionally and professionally, as would be expected for anyone in Ms. Grimsley's former and current positions. As this is not a case about actual harm or untoward personal benefit and instead, only a case about an error in judgment regarding her position of conflict, a fine would serve no punitive or rehabilitative purpose.

**B.     PROBATION**

U.S.S.G. § 5B1.2 and 3 of the Guidelines address Term of Probation and Conditions of Probation respectively. This case, in which Ms. Grimsley's offense level is 4, actually falls below the provisions covered by the Guidelines with respect to a minimum term of

5

probation. U.S.S.G. § 5B1.2(a)(1) provides that the term shall be "at least one year but not more than five years if the offense level is 6 or greater." Subsection (2) provides that probation shall be "no more than three years in any other case." (*See* Gov't Mem at 5.) While this sets a maximum probationary term of three years, it plainly sets no minimum term. While experience tells that one-year is a typical minimum period of probation, an offense level of 4 is plainly not a circumstance contemplated by the Guidelines with respect to a minimum term. Accordingly, Ms. Grimsley reads the Guidelines as imposing no minimum period of probation.

Ms. Grimsley therefore respectfully suggests to the Court that in light of all of the circumstances explained above, and in light of the information provided in this Memorandum and its attachments, a probationary term of six months would be sufficient to ensure that Ms. Grimsley has been fully rehabilitated and will continue to move forward as a contributing and law-abiding member of society. Ms. Grimsley defers to the Court's practice in this regard, but can identify no particular reason to impose a longer period of probation.

Finally, with respect to whatever period of probation the Court imposes, Ms. Grimsley requests that such probation be unsupervised. Ms. Grimsley has demonstrated her contrition and her adherence to the rules of her release pending sentencing. The mandatory conditions of probation contemplated under § 5B1.3(a), and applicable to this case are as follows: (1) that she not commit any other offense; (2) that she not unlawfully possess a controlled substance; (3) that she refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation and at least two periodic drug tests thereafter (to be determined by the court). The remaining mandatory conditions either do not apply to the instant offense or would only apply if the Court imposed restitution, a fine, or special assessments. None of the suggested probationary terms under § 5B1.3(c) are warranted

by the facts of this case, which do not involve a risk of flight, child support, work requirements or controlled substances. Obviously, Ms. Grimsley has no reason to oppose any other customary terms (such as a requirement to answer truthfully any inquiries by the probation office). Indeed, this very short list of applicable mandatory conditions only underscores the fact that a term of probation of greater than six months (which may be reasonable to ensure the absence of substance abuse) would not be necessary.

For each of these reasons, Ms. Grimsley requests that the Court impose a sentence of unsupervised probation and submits that neither a fine (other than the mandatory special assessment of $25), nor restitution is appropriate here. Ms. Grimsley thanks the Court for its attention.

Dated: December 6, 2005

Respectfully submitted,

Jeffrey T. Green
Sidley Austin Brown & Wood
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of December, 2005, I caused true and correct copies of the foregoing Memorandum in Aid of Sentencing to be served via ECF upon:

Daniel P. Butler, Esq.
United States Attorneys Office
  for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20530

and via First Class mail, postage pre-paid upon:

LaVerne Ebron
United States Probation Office
333 Constitution Avenue, N.W.
Suite 2800
Washington, D.C. 20001

Julie A. Yoselle
Legal Assistant