UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL CASE NO. 05-499m |
| v. | VIOLATION: 18 U.S.C. §§ 208 & 216 (a)(1) (Financial Conflict of Interest) |
| ANDREA K. GRIMSLEY, | |
| Defendant. | |

FILED

SEP 2 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, ANDREA GRIMSLEY, agrees and stipulates to the following facts in connection with her plea of guilty to 18 U.S.C. §§ 208 & 216(a)(1) (Financial Conflict of Interest).

The Headquarters Support Branch within the United States Immigration and Customs Enforcement Division (hereafter, "ICE") was an office of the Department of Homeland Security which is located in Washington, D.C., and is part of the Executive Branch of the United States Government. The Headquarters Support Branch, among other things, reviewed, commented upon, and made recommendations regarding federal contracts to be awarded to private organizations to support its mission in developing and coordinating the implementation of a comprehensive national strategy to secure the United States. The defendant, ANDREA GRIMSLEY (hereafter "GRIMSLEY") was the Chief of the Headquarters Support Branch. As Chief, she had primary authority for oversight and direction of procurement activities. Her responsibilities included providing technical guidance, formulating contract actions, negotiating procurement initiatives and resolving disputes and claims for ICE.

The Weapons and Ammunition Commodity Council (hereafter "WACC") was part of the

Department of Homeland Security's Strategic Sourcing Program, an initiative to optimize cross-departmental handgun acquisitions through collaboration of agency technical and acquisition experts. The National Firearms and Tactical Training Unit (hereafter "NFTTU") was an office within the Department of Homeland Security which was responsible for the technical aspects of weapons contracting.

FedBid.com (hereafter "FedBid") was a private, for-profit business located in McLean, Virginia, which provided web-based procurement services to public sector organizations such as the Department of Homeland Security. Specifically, FedBid offered an online reverse auctioning service that allowed federal agencies to solicit contractors. In exchange for its auction services, FedBid received a commission (generally 3% of the contract price) from the successful contract award recipient.

In or about November, 2003, the WACC announced that the Headquarters Support Branch of ICE, in conjunction with the NFTTU, would head a procurement initiative ("the handgun acquisition") to acquire an additional 65,000 pistols for their existing weapons platform to be distributed among all organizational elements within the Department of Homeland Security, including ICE, U.S. Customs and Border Protection, the Transportation Security Administration, the U.S. Coast Guard and the Federal Law Enforcement Training Center.

In or about November, 2003, as Chief of the Headquarters Support Branch of ICE, GRIMSLEY was initially assigned and did assume responsibility as the Contracting Officer for the handgun acquisition. Generally, the Contracting Officer has the sole authority and duty to enter into, administer, and make related determinations and findings regarding the handgun acquisition. In short, the Contracting Officer is responsible for overseeing all substantive and

2

technical aspects of the handgun acquisition, including the method and manner for the solicitation of bids.

From in or about late November, 2003, through in or about February, 2004, GRIMSLEY was a candidate for a position at FedBid as an account executive reporting directly to Brendan Walsh, Vice President of FedBid. On or about January 13, 2004, ICE issued a Request for Information soliciting information about a pistol model family from potential contractors. The handgun contract solicitation requirements were defined as follows in the Request for Information: "Pricing will be submitted through a Reverse Auction. Only contractors that are considered technically acceptable after evaluation of the technical requirements shall be permitted to participate in the Reverse Auction. Offerors will need to register with www.FEDBID.com to submit their pricing quotes. Questions regarding registration should be addressed to client services at 1-877-9FEDBID(toll free)."

In late November, 2003, GRIMSLEY sought advice from the Ethics Officer at ICE about a potential conflict of interest related to her employment negotiations with FedBid and, on December 1, 2003, sent an email to him confirming their discussion. In that email GRIMSLEY stated that "[a]ny acquisitions that might be considered for fedbid.com soliciting will be handled by our senior contract specialist, Jan Wisor . . . [t]his will prevent the appearance that I'm recommending the use of fedbid.com." Notwithstanding this email, from in or about late November, 2003 through in or about February 2, 2004, in the District of Columbia and elsewhere, GRIMSLEY, while an employee of the executive branch of the United States government, did participate personally and substantially in the handgun acquisition, a matter in which, to her knowledge, FedBid had a financial interest.

3

Specifically, on or about January 6, 2004, GRIMSLEY and her subordinate attended a handgun contract meeting at NFTTU in Altoona, Pennsylvania. Throughout the meeting, GRIMSLEY was the primary participant in the discussions regarding the technical aspects of the handgun contract which would be set forth in the upcoming January 13, 2004 Request for Information. During this meeting or shortly thereafter, GRIMSLEY directed her subordinate to include in the Request for Information a requirement that all prospective bidders register with and utilize FedBid during the procurement process. On or about January 7, 2004, GRIMSLEY participated, by phone, in a high-level meeting with the WACC to discuss the number of weapons to be acquired and the appropriate distribution of those weapons among the various organizational elements.

By letter dated January 8, 2004, FedBid extended an offer of employment for the position of Account Executive to GRIMSLEY which set forth the terms of the offer including, among other things, base compensation, other compensation, start date, health insurance and 401K benefits. On or about January 16, 2004, GRIMSLEY executed the employment offer from FedBid acknowledging her acceptance of the terms of the offer, which included a February 2, 2004 start date.

On or about January 21, 2004, GRIMSLEY participated, by phone, in a second meeting with the WACC to further discuss development of the strategic sourcing plan including the specific distribution of weapons acquired through the upcoming handgun contract. On or about February 2, 2004, GRIMSLEY began her employment with FedBid as an Account Executive.

The United States Attorney's Office for the District of Columbia and GRIMSLEY do not read the specific misdemeanor provision with which GRIMSLEY is being charged as requiring

4

proof of specific intent. Further, the parties agree that the evidence adduced in the course of the investigation, while sufficient to prove a violation of the misdemeanor statute beyond reasonable doubt, does not indicate that GRIMSLEY'S conduct was willful.

5

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of the Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense.

Date: 9/23/05

Andrea Grimsley
Defendant

I have discussed this Statement of the Offense with my client, Andrea Grimsley. I concur with her decision to stipulate to this Statement of the Offense.

Date: 9/28/05

Jeffrey T. Green, Esq.
Attorney for the Defendant

6