**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-499-01M (JMF)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREA K. GRIMSLEY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits this supplemental memorandum in aid of the sentencing of defendant Andrea K. Grimsley. On September 28, 2005, defendant pled guilty before the Court to a one-count Information charging her with a misdemeanor violation of 18 U.S.C. §§ 208 and 216(a)(1), Acts affecting a personal financial interest.

## I. PROCEDURAL BACKGROUND

On December 5, 2005, the government filed in this matter a memorandum in aid of sentencing. On December 6, 2005, the defendant filed her memorandum in aid of sentencing. The government files this supplement to respond to some of the contentions in defendant's memorandum in aid of sentencing.

## II. DISCUSSION

In her memorandum, defendant sets forth her arguments as to her conduct in this matter and her motives underlying that conduct. *See* Defendant's Memorandum in Aid of Sentencing, at page 3. In response, the government believes it is important to remember to what facts defendant has actually agreed. As defendant agreed in the Statement of Offense, her conduct in this matter included, among other things, (1) from late-November 2003, defendant was a candidate for a

position with FedBid as an account executive; (2) after defendant obtained advice from her Ethics Officer on the potential conflict of interest present in this matter relative to her participating in the use of FedBid as the auction agency in the handgun acquisition bid process, defendant stated in an e-mail to the Ethics Officer on December 1, 2003, that she would take appropriate steps to "prevent the appearance that [she was] recommending the use of fedbid.com" in the bid process; (3) on or about January 6, 2004, defendant directed her subordiantes to include in the Request for Information on the handgun acquisition a requirement that all prospective bidders register with and utilize FedBid during the procurement process; and (4) on January 8, 2004, FedBid extended an offer of employment to defendant.  In other words, defendant was a Department of Homeland Security official who put herself in a compromised position when, being responsible for a reverse auction process in which a private company, FedBid, had a financial interest in that auction process, was negotiating for and obtained employment with that private company.

Nevertheless, defendant argues that she had "innocent motives" for her conduct in this matter and that "FedBid [w]as a 'great tool' for her office to use in this instance as well." *Id.*[1]  The problem with this situation, and why Congress has made it a crime, as well as defendant's contentions, is that there is no way to discern what defendant's motives were or whether FedBid was the best company to run the auction process because of the conflict of interest defendant had at that time.  As the Supreme Court held, in a case addressing the predecessor statute to 18 U.S.C. § 208:

---

[1]  Attached to her memorandum (Attachment C), defendant submitted a previously sent letter to the Chief of the Criminal Division of the United States Attorney's Office dated August 2, 2005. This letter had been part of the pre-plea discussions in this case.  Defendant refers the Court to this document as a "much more fulsome discussion of [her] views of the facts[.]" Defendant's Memorandum in Aid of Sentencing, at page 3.  Defendant's "views" are not ones, however, as shown by the plea in this matter, with which the government necessarily agreed.

The obvious purpose of the statute is to insure honesty in the Government's business dealings by preventing federal agents who have interests adverse to those of the Government from advancing their own interests at the expense of the public welfare. * * * The moral principle upon which the statute is based has its foundation in the Biblical admonition that no man may serve two masters. * * * The statute is thus directed not only at dishonor, but also at conduct that tempts dishonor. This broad proscription embodies a recognition of the fact that an impairment of impartial judgment can occur in even the most well-meaning men [and women] when their personal economic interests are affected by the business they transact on behalf of the Government. To this extent, therefore, the statute is more concerned with what might have happened in a given situation than with what actually happened. It attempts to prevent honest government agents from succumbing to temptation by making it illegal for them to enter into relationships which are fraught with temptation. * * * The statute is directed at an evil which endangers the very fabric of a democratic society, for a democracy is effective only if the people have faith in those who govern, and that faith is bound to be shattered when high officials and their appointees engage in activities which arouse suspicions of malfeasance and corruption * * *. * * * [the statute's] primary purpose is to guarantee the integrity of the federal contracting process and to protect the public from the corruption which might lie undetectable beneath the surface of a contract conceived in a tainted transaction.

United States v. Mississippi Valley Generating Co., 364 U.S. 520, 548-49, 549-50, 562, 564-65 (1960). Moreover, "activities that arouse suspicions of malfeasance and corruption" also cost the government and taxpayers the expense of investigations to insure and preserve the integrity of the contracting process.

As to the sentence in this matter, defendant argues that a six-month sentence of probation would be appropriate. *See* Defendant's Memorandum in Aid of Sentencing, at pages 6-7. The government, as stated in its initial Memorandum in Aid of Sentencing, has not opposed probation in this matter. If the Court imposes a period of probation, the government defers to the Court as to the length, but requests that the factors discussed in this memorandum and the government's initial memorandum in aid of sentencing be considered in that determination.

Finally, defendant argues that a fine would not be appropriate in this case. Defendant's Memorandum in Aid of Sentencing, at page 5. The government defers to the Court on this issue. Nevertheless, the government notes that, according to the Presentence Investigation Report, at page 9, ¶ 55, defendant "has sufficient assets to pay in full any reasonable fine imposed by the Court." The fine range under the United States Sentencing Guidelines for this offense is $250 to $5,000. Presentence Investigation Report, at page 12, ¶ 68. Since deterrence is an important consideration in sentencing, especially in a case involving a conflict of interest, a fine potentially furthers that goal, especially if probation is imposed. *See* 18 U.S.C. § 3553(a)(2)(A) and (B) ("[t]he court, in determining the particular sentence to be imposed shall consider . . . the need for the sentence imposed . . . to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct").

### III.  CONCLUSION

WHEREFORE, for the reasons stated herein and the government's initial Memorandum in Aid of Sentencing, the government respectfully requests that the Court impose a sentence within the applicable guidelines's range, as specified in the plea agreement.

Respectfully Submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar No. 451058

[s]

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
DANIEL P. BUTLER
ASSISTANT UNITED STATES ATTORNEY
D.C. Bar No. 417718
555 Fourth Street, N.W., Room 5231
Washington, D.C. 20530
(202) 353-9431
Daniel.Butler@USDOJ.Gov